**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arnold R. Ohton, Sr., ) | No. CV 06-360-PHX-MHM |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| City of Phoenix, a Municipality within ) | |
| the State of Arizona; Melvin Schlink, ) | |
| personally and in his capacity as ) | |
| Supervisor of Defendant. ) | |
| ) | |
| Defendant. ) | |
| ) | |

Currently before the Court are Defendants City of Phoenix and Melvin Schlink's unopposed Motion for summary judgment (Dkt. #54) and Defendants' unopposed Motion summary disposition of their motion for summary judgment (Dkt. #56). After reviewing the record and Defendants' unopposed Motions, the Court issues the following Order.

I

On January 30, 2006, Plaintiff Arnold Ohton, Sr. ("Plaintiff") filed a complaint against Defendants City of Phoenix and Melvin Schlink ("Defendants") (Dkt. #1). Plaintiff asserts multiple claims including race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Defendants filed their Answer on June 23, 2006 (Dkt. #5).

On September 15, 2006, Plaintiff filed an Amended complaint (Dkt. #15), to which Defendants filed their Answer on October 2, 2006 (Dkt. #16).

On August 22, 2006, the Court issued a Rule 16 Scheduling Order, setting the discovery deadline for March 30, 2007, and the dispositive motions deadline for May 18, 2007 (Dkt. #14). Three days before the end of the dispositive motions deadline, Plaintiff's counsel moved to withdraw (Dkt. #49). The next day, Defendants moved to extend the time to file dispositive motions (Dkt. # 51). On May 21, 2007, the Court granted Plaintiff's counsel's Motion to withdraw and extended the dispositive motions deadline to June 25, 2007 (Dkt. #53).

On June 25, 2007, Defendants filed the instant Motion for summary judgment challenging Plaintiff's claims on multiple grounds (Dkt. #54). Plaintiff did not respond to Defendants' Motion for summary judgment, and on August 22, 2007, Defendants filed a Motion for summary disposition of their motion for summary judgment (Dkt. #56). On August 29, 2007, the Court instructed Plaintiff to file any responsive memoranda opposing the relief sought by Defendants by September 7, 2007 (Dkt. #58). To date, Plaintiff has not responded to either Defendants' Motion for summary judgment or Defendants' Motion for summary disposition.

## II

### A. **LRCiv 7.2(i)**

Local Rule of Civil Procedure ("LRCiv") 56.1 states that "the opposing party . . . [has] 30 days after service within which to serve and file a responsive memorandum in opposition" to the moving party's motion for summary judgment. Pursuant to LRCiv 56.1 and the Court's May 21, 2007 order, Plaintiff should have filed a response to Defendants' Motion for summary judgment by June 25, 2007. Furthermore, on August 29, 2007, the Court instructed Plaintiff to file any responsive memoranda opposing Defendants' Motions for summary judgment and summary disposition by September 7,

2007.  Two months later, Plaintiff still has yet to respond to the instant Motions for summary judgment and summary disposition; Plaintiff's time to respond has long past.

Defendants' Motion for summary disposition of their motion for summary judgment, and Plaintiff's failure to respond to either of Defendants' Motions, raises the applicability LRCiv 7.2(i), which provides in pertinent part:

> If a motion does not conform in all substantial respects with the requirements of this Local Rule, or if the unrepresented party or counsel does not serve and file the required answering memoranda, . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily.

As such, pursuant to LRCiv 7.2(i), the Court may consider Plaintiff's failure to respond as consent to the granting of Defendants' Motion for summary judgment Henry v. Gill Indus., 983 F.2d 943, 950 (9th Cir.1993).  However, a district court may not grant an unopposed motion for summary judgment solely because the opposing party has failed to file an opposition.  Cristobal v. Siegel, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994).  A district court abuses its discretion when it grants a motion for summary judgment pursuant to a local rule such as LRCiv 7.2(i) where the movant's papers are insufficient to support the motion or on their face reveal a genuine issue of material fact.  Id.; Martinez v. Stanford, 323 F.3d 1178, 1182-1183 (9th Cir. 2003).  Accordingly, the Court may not summarily grant Defendants' Motion for summary judgment, but must instead review the sufficiency of Defendants' Motion for summary judgment.

B. **Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact; the moving party must present the basis for its summary judgment motion and identify those portions of the record that it believes demonstrate the

- 3 -

1  absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323
2  (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001). A material fact is one
3  that might affect the outcome of the case under governing law. Anderson v. Liberty
4  Lobby, Inc., 477 U.S. 242, 248 (1986). And in order to preclude summary judgment, a
5  dispute about a material fact must also be "genuine," such that a reasonable jury could
6  find in favor of the non-moving party. Id.; Anheuser-Busch, Inc. v. Natural Beverage
7  Distrib., 69 F.3d 337, 345 (9th Cir. 1995).
8        In determining whether the moving party has met its burden, the Court views the
9  evidence in the light most favorable to the nonmoving party. Allen v. City of Los
10 Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). The Court must not make credibility
11 determinations or weigh conflicting evidence. Musick v. Burke, 913 F.2d 1390, 1394
12 (9th Cir. 1990). Further, the Court must draw all reasonable inferences in favor of the
13 nonmovant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002).
14       If the moving party meets its burden with a properly supported motion for
15 summary judgment, then the burden shifts to the nonmoving party to present specific
16 facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Elec.
17 Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The nonmoving party may not rest
18 on bare allegations or denials in his pleading, but must set forth specific facts, by affidavit
19 or as otherwise provided by Rule 56, demonstrating a genuine issue for trial.
20 Fed.R.Civ.P. 56(e); Anderson, 447 U.S. at 248-49. Conclusory allegations, unsupported
21 by factual material, are insufficient to defeat a motion for summary judgment. Taylor v.
22 List, 880 F.2d 1040, 1045 (9th Cir. 1989).
23       In sum, the ultimate question on a motion for summary judgment is whether the
24 evidence "presents a sufficient disagreement to require submission to a jury or whether it
25 is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at
26 251-52. The mere existence of a scintilla of evidence supporting the non-movant's
27 position is insufficient; there must be evidence from which the trier of fact could
28 reasonably find for the non-movant. Id. at 252. If the nonmoving party's evidence is

1  merely colorable or not significantly probative, the Court may grant summary judgment.
2  Id. at 249.  Indeed, a district court may grant an unopposed motion for summary judgment
3  if the movant's papers are themselves sufficient to support the motion and do not on their
4  face reveal a genuine issue of material fact.  Henry, 983 F.3d at 950.
5        A district court is not required to probe the record in search of a genuine issue of
6  triable fact.  Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party
7  has the burden of identifying with reasonable particularity the evidence that precludes
8  summary judgment.  Id.; *see* Carmen v. San Francisco Unified School District, 237 F.3d
9  1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the record that creates a
10  genuine issue of material fact, a district court may grant summary judgment if the
11  opposing party's papers do not include or conveniently refer to that evidence).
12
13                                                 III
14        Plaintiff has filed no opposition to Defendants' Statement of Undisputed Facts
15  ("DSF") in support of their Motion for summary judgment.  Plaintiff's original and
16  amended complaints contain only bare allegations; Plaintiff has set forth no specific facts
17  in opposition to Defendants' Motion for summary judgment, by affidavit or otherwise as
18  provided by Rule 56 of the Federal Rules of Civil Procedure.  Accordingly, the Court
19  adopts Defendants' Statement of Undisputed Facts in its entirety.
20        Plaintiff, a 63 year old Hispanic male, worked for the City of Phoenix at the Val
21  Vista Water Treatment Plant from June 1993 until his scheduled retirement in December
22  2005 (Defendants' Statement of Undisputed Facts, "DSF" ¶¶ 1-4, 12, 298).  Prior to
23  retirement, Plaintiff worked as an Operations Maintenance Technician ("O&M Tech")
24  (DSF ¶¶ 7, 9).
25        Depending on their skill levels, O&M Techs performed a combination of
26  maintenance, operations, or electrical and instrumentation work (DSF ¶ 8).  As an O&M
27  Tech, Plaintiff performed a combination of operation and maintenance duties (DSF ¶ 9),
28

- 5 -

1  and in February 2004, Plaintiff was given the duties of a "shift responsible" O&M Tech
2  (DSF ¶ 11).

3       In the 1990s, several Hispanic subcontractors working at the Val Vista Water
4  Treatment Plant were not allowed to use the Plant's cafeteria pursuant to Plant policy that
5  contract workers are not permitted to use Plant facilities (DSF ¶¶ 31-33).  Also in the
6  1990s, Plaintiff reported to his supervisor, Kevin Williams, that someone defaced a Cesar
7  Chavez poster in one of the Plant hallways by writing "WP" on the poster (DSF ¶¶ 39-
8  40).  Williams investigated the incident and determined that Plant employee Kurt Gregory
9  was responsible (DSF ¶ 42).  Williams made Gregory submit a written apology to
10 Plaintiff (DSF ¶ 43).

11      Around April 1997, Plaintiff discovered a certificate in his Plant mailbox that read
12 "Val-Vista Water Plant take[s] pride in proclaiming that [Plaintiff] has fulfilled the
13 requirements of Snitching, Sniveling & Crying . . . . We can only hope he will grow up to
14 be a man someday" (DSF ¶ 46).  Sometime after February 2000, some of Plaintiff's co-
15 workers mocked Plaintiff after he returned to work following heart surgery (DSF ¶ 51).

16      In June 2004, Plaintiff informed a Personnel Analyst with the Water Services
17 Department that he planned to retire in a year and a half (DSF ¶ 298).

18      At 7:00 p.m. on January 2, 2005, Val Vista Water Treatment Plant O&M Techs
19 Jason McDonald and Larry Reichel – who is approximately the same age as Plaintiff –
20 were releasing treated water from the plant's water filters into the distribution system to
21 the public (DSF ¶¶ 64, 67).  One hour later, McDonald and Reichel noticed that water
22 turbidity levels – the levels of cloudiness or haziness in water caused by individual
23 particles – were exceeding the state and federal maximum turbidity levels of 0.5
24 nephelometric turbidity units (NTU's) (DSF ¶ 71).  In response, McDonald and Reichel
25 placed some of the plant's water filters off-line (DSF ¶ 71).  Neither McDonald nor
26 Reichel released excessively turbid water – water with turbidity levels greater than 0.5
27 NTU's – into the distribution system (DSF ¶ 72).
28

- 6 -

1 | Plaintiff and Raphael Frias, a newly-hired young Hispanic trainee, relieved
2 | McDonald and Reichel and began their shifts at the Val Vista Water Treatment Plant at
3 | 10:00 p.m. on January 2, 2005. Before leaving, McDonald advised Plaintiff that the
4 | water turbidity levels were "bad" (DSF ¶¶ 75-76, 78, 80). At approximately 11:00 p.m.,
5 | Plaintiff released excessively turbid water into the distribution system (DSF ¶ 82, 84).
6 | Plaintiff also directed Frias to do the same (DSF ¶ 83). According to the City of Phoenix
7 | Water Service Department's internal policies, excessively turbid water must be sent back
8 | into the system for re-filtering (DSF ¶¶ 61-62). Plaintiff was aware of this policy (DSF ¶
9 | 85). However, Plaintiff released the excessively turbid water into the distribution system
10 | "because an unsigned message on a plant chalkboard stated, in its entirety, 'twenty
11 | million pickup mandatory'" (DSF ¶ 87).
12 | Emergency alarms sounded immediately after Plaintiff released excessively turbid
13 | water into the distribution system at approximately 11:00 p.m. (DSF ¶¶ 82, 92).
14 | However, Plaintiff did not contact Kevin Williams, the Water Facilities Supervisor, until
15 | approximately 3:00 a.m. (DSF ¶ 93). Plaintiff violated City policy by not immediately
16 | notifying the Water Facilities Supervisor about the situation (DSF ¶ 94). Based on this
17 | incident, Plaintiff received a Notice of Inquiry at the end of January 2005 (DSF ¶ 100).
18 | In February 2005, Williams met with Plaintiff and informed him that based on the
19 | January 2, 2005 incident, Plaintiff would be assigned to solely maintenance, non-
20 | operations duties in the future (DSF ¶¶ 110, 112-113). Williams did not mention
21 | Plaintiff's age, national origin, or race during the meeting (DSF ¶ 115). Despite
22 | Plaintiff's reassignment to maintenance, Plaintiff's job title, work schedule, hourly wage,
23 | and overtime hours remained the same (DSF ¶¶ 122-127, 130).
24 | In January 2005, O&M Techs Paul Yanez and Bill Wlodwiski accidentally caused
25 | a flood at the Val Vista Water Treatment Plant (DSF ¶ 132). Yanez and Wlodwiski were
26 | not reassigned after this incident (DSF ¶ 141). Yanez is Hispanic, and both men are only
27 | approximately 10 years younger than Plaintiff (DSF ¶¶ 137, 139).
28 |

- 7 -

1    In July 2005, Plaintiff received a written reprimand for, among other things, failing
2 to complete his weekly work order report by not inspecting a lime storage and feed room,
3 which caused an overflow of an extremely hazardous chemical (DSF ¶ 189).  Despite the
4 July 2005 written reprimand, Plaintiff's work schedule, hourly wage, overtime hours, and
5 benefits remained the same (DSF ¶¶ 202-04).

6    In July 2005, Plaintiff found a tampon in his Plant mailbox (DSF ¶ 206).  In
7 addition, at some point after July 2005, Plaintiff found a "porno booklet" in the paper
8 towel dispenser in one of the Plant bathrooms (DSF ¶¶ 215-218).  Further, at one point
9 during Plaintiff's employment at the Val Vista Water Treatment Plant, a number of
10 Plaintiff's co-workers blew kisses at Plaintiff (DSF ¶¶ 222-23).

11    In August 2005, Plaintiff received nine "not met" ratings on his Performance
12 Management Guide Review ("PMG") (DSF ¶¶ 249, 256).  Despite the negative August
13 2005 PMG, Plaintiff's work schedule, hourly wage, and benefits remained the same (DSF
14 ¶¶ 202-04).

## IV

### A. **Title VII & the ADEA**

#### i. Age, Race, and National Origin Discrimination

To establish a prima facie case of age, race, or national origin discrimination under Title VII of the Civil Rights Act of 1964, 701 et seq., 42 U.S.C.A. 2000e et seq., or the Age Discrimination in Employment Act of 1967 ("ADEA"), a plaintiff must show that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment.  Moran v. Selig, 447 F.3d 748, 753 (9th Cir. 2006); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1280-81 (9th Cir. 2000) (stating that in order to establish a violation of the ADEA, employees must first establish a prima facie case of discrimination).

To be "similarly situated," an employee must have the same supervisor, be subject to the same standards, and have engaged in the same conduct. Vasquez v. County of Los Angeles, 349 F.3d 634, 641-42 (9th Cir. 2003) (citing Hollins v. Atlantic Co., Inc., 188 F.3d 652, 659 (6th Cir. 1999)).

Defendants do not dispute that Plaintiff belongs to a protected class. However, Defendants argue that Plaintiff fails to meet any of the other elements necessary to establish a prima facie case of discrimination under Title VII.

In support of his claims of age, race, and national origin discrimination, Plaintiff only offers the conclusory allegations contained in his original and amended complaints - that Defendants discriminated against Plaintiff because they issued Plaintiff a Notice of Inquiry in January 2005; modified Plaintiff's duties following the January 2 and 3, 2005 incident; failed to discipline other, non-Hispanic, O&M Techs after the January 2 and 3, 2005 incident; issued Plaintiff a July 2005 written reprimand and a negative August 2005 Performance Management Guide Review ("PMG") without justification; failed to issue a written reprimand or negative PMG to other, non-Hispanic, O&M Techs; and increased supervision over Plaintiff.

Plaintiff's allegations of discrimination primarily stem from the fact that Plaintiff was reassigned to perform only maintenance duties after the January 2 and 3, 2005 incident, whereas McDonald and Reichel, the two employees who worked the shift prior to Plaintiff's shift on the night of the January 2 and 3, 2005 incident, were allegedly not similarly reassigned. In his deposition testimony, Plaintiff acknowledged that McDonald and Reichel were not engaged in the same conduct that Plaintiff was engaged in during the January 2 and 3, 2005 incident (DSF ¶¶ 72-73). Thus, these employees are not similarly situated to Plaintiff. In addition, Plaintiff acknowledged that he did not know whether or not McDonald and Reichel were non-Hispanic (DSF ¶¶ 66, 69). Plaintiff also acknowledged that Reichel is approximately his same age (DSF ¶ 67). There is no evidence in the record to indicate that McDonald or Reichel are outside Plaintiff's protected class.

1    Plaintiff's discrimination claims also arise from the fact that two other employees,
2 Paul Yanez and Bill Wlodwiski, were not disciplined after they flooded the Val Vista
3 Water Treatment Plant in a different January 2005 incident.  However, Yanez and
4 Wlodwiski were not engaged in the same conduct that Plaintiff was engaged in during the
5 January 2 and 3, 2005 incident (DSF ¶¶ 132-135).  Thus, these employees are not
6 similarly situated to Plaintiff.  In addition, Yanez is Hispanic and both men are only about
7 10 years younger than Plaintiff (DSF ¶¶ 137, 139).  There is no evidence in the record to
8 indicate that Yanez or Wlodwiski are outside Plaintiff's protected class.

9    In sum, there is no evidence in the record to indicate that a genuine issue of
10 material fact exists as to whether similarly situated employees not in Plaintiff's protected
11 class received more favorable treatment.

12    In addition, while Plaintiff alleges that he lost advancement opportunities and
13 opportunities to earn overtime pay, Plaintiff offers no evidence to support these
14 allegations.  Plaintiff acknowledged in his deposition testimony that although his duties
15 changed after the January 2 and 3, 2005 incident from a combination of maintenance and
16 operations duties to maintenance duties only, his job title, hourly wages, work schedule,
17 and overtime all stayed the same (DSF ¶¶ 123-130).  However, since Plaintiff's own
18 statements in his deposition testimony acknowledge that the other employees in question
19 are neither similarly situated nor outside Plaintiff's protected class, the Court finds it
20 unnecessary to determine whether Plaintiff was subjected to an adverse employment
21 action.  For those same reasons, the Court also finds it unnecessary to determine whether
22 Plaintiff performed his job satisfactorily.

23    Accordingly, Plaintiff has failed to establish a prima facie claim of age, race, or
24 national origin discrimination under Title VII or the ADEA.

### ii. Retaliation

27    To establish a prima facie case of retaliation under Title VII, a plaintiff must
28 establish the following three factors: (1) involvement in a protected activity; (2) an

1 adverse employment action; and (3) a causal link between the activity and the
2 employment action. Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).

3       Employment decisions that constitute an adverse employment action include
4 termination, a significant change in employment status, dissemination of a negative
5 employment reference, issuance of an *undeserved* negative performance review, refusal to
6 consider an employee for promotion, and a significant change in benefits. Burlington
7 Indus. Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (emphasis added); Brooks v. City of San
8 Mateo, 229 F.3d 917, 928 (9th Cir. 2000).  However, "mere ostracism" by co-workers
9 does not constitute an adverse employment action. Ray, 217 F.3d at 1241 (citation
10 omitted).  In the context of retaliation, an employment decision constitutes an adverse
11 employment action if it is reasonably likely to deter employees from engaging in
12 protected activity. Id. at 1242-43.

13       Defendants do not dispute that Plaintiff was engaged in a protected activity when
14 he filed a charge of discrimination with the EEOC and internal grievances with his union,
15 which he did on March 7, 2005, and July 5, 2005, respectively (DSF ¶¶ 243, 262).  In
16 addition, Defendants do not dispute that Plaintiff received a written reprimand in July
17 2005 and a Performance Management Guide Review ("PMG") in August 2005, which
18 stated that Plaintiff failed to meet performance expectations in nine categories (DSF ¶¶
19 189, 256).  Thus, Plaintiff has met the first factor for a prima facie case of retaliation
20 under Title VII is met.  However, Defendants contend that these do not constitute an
21 adverse employment action because they were not undeserved.

22       Plaintiff states in his Amended complaint that his July 2005 reprimand and August
23 2005 PMG were issued without justification.  However, Plaintiff acknowledged in his
24 deposition testimony that he engaged in the various instances of misconduct on which
25 Defendants claim that the July 2005 reprimand and August 2005 PMG were based (DSF
26 ¶¶ 82-86, 93-94, 160, 176, 186-87, 290).  Moreover, after discussing the August 2005
27 PMG with his O&M Tech supervisor, Plaintiff signed the PMG and wrote, "I believe I
28 now have a real supervisor that is honest and fair and open-minded" (DSF ¶ 294).  There

- 11 -

1  is no evidence in the record to support Plaintiff's allegation that his July 2005 reprimand
2  and August 2005 PMG were undeserved. Thus, no genuine issue of material fact exists
3  as to whether Plaintiff's July 2005 reprimand or August 2005 PMG constitute an adverse
4  employment action.  As such, Plaintiff has not met the second factor for a prima facie
5  case of retaliation under Title VII; and the Court finds it unnecessary to determine
6  whether the third factor is met, i.e., whether a genuine issue of material fact exists as to
7  whether a causal link exists between either Plaintiff's July 2005 reprimand or August
8  2005 PMG, and the fact that Plaintiff filed a charge of discrimination with the EEOC and
9  internal grievances with his union.

10  In addition, Plaintiff acknowledged in his deposition testimony that his July 2005
11  reprimand and August 2005 PMG had no effect on his compensation, his benefits, or any
12  other condition of his employment (DSF ¶¶ 202-04, 265-68). Therefore it is unlikely –
13  and there is no indication in the record – that either Plaintiff's July 2005 reprimand or
14  August 2005 PMG constitute an employment action that is reasonably likely to deter
15  employees from engaging in a protected activity.

16  Accordingly, Plaintiff has failed to establish a prima facie case of retaliation under
17  Title VII or the ADEA.
18  //
19  //
20  //

21  iii. Hostile Work Environment

22  To establish a prima facie case of hostile work environment under Title VII, a
23  plaintiff must show that (1) he was subjected to verbal or physical conduct of a harassing
24  nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or
25  pervasive to alter the conditions of the plaintiff's employment and create an abusive work
26  environment. Galdamez v. Potter, 415 F.3d 1015, 1023 (9th Cir. 2005) (citing Vasquez v.
27  County of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003)).
28

- 12 -

1     To determine whether conduct is sufficiently severe or pervasive, the Court looks
2  to "all of the circumstances, including the frequency, severity, and nature (i.e., physically
3  threatening or humiliating as opposed to merely verbally offensive ) of the conduct." Id.;
4  Kortan v. Cal. Youth Authority, 217 F.3d 1104, 1110 (9th Cir. 2000) ("Conduct must be
5  extreme to amount to a change in the terms and conditions of employment.") (citation
6  omitted).  In addition, the "hostility of the environment must be considered 'from the
7  perspective of a reasonable person belonging to the racial or ethnic group of the
8  plaintiff.'" Galdamez, 415 F.3d at 1023 (citing McGinest v. GTE Serv. Corp., 360 F.3d
9  1103, 1113 (9th Cir. 2004)).

10     Plaintiff's claim of harassment resulting in a hostile work environment seems to be
11  based on the following facts: (1) at some point after July 2005, Plaintiff discovered a
12  "porno booklet" inside a paper towel dispenser at work; (2) in July 2005, Plaintiff
13  discovered a tampon in his mailbox at work; (3) at some point after February 2000, a
14  group of co-workers made disparaging remarks to Plaintiff when he returned to work
15  after heart surgery; (4) at some point during Plaintiff's employment at the Val Vista
16  Water Plant, a group of co-workers blew kisses at Plaintiff; (5) in 1997, Plaintiff
17  discovered a disrespectful certificate in his work mailbox; (6) at some point in the 1990s,
18  a Cesar Chavez poster was defaced with the letters "WP," which Plaintiff believes meant
19  "white power"; and (7) at some point in the 1990s, several Hispanic subcontractors
20  performing work at the Val Vista Water Treatment Plant were not permitted to use the
21  Plant's cafeteria (DSF ¶¶ 31-41, 46, 51-54, 206-07, 215-18, 222-23, 308).

22     Plaintiff acknowledged in his deposition testimony that he has no evidence that
23  Defendants or his co-workers intended that Plaintiff discover or be exposed to the "porno
24  booklet" (DSF ¶ 219).  In addition, Plaintiff did not report the instances involving the
25  certificate or his co-workers' remarks to anyone (DSF ¶¶ 50, 56).  Further, all contract
26  workers are not permitted to use plant facilities, and Plaintiff acknowledged that Hispanic
27  City employees are permitted to use the Plant's facilities (DSF ¶¶ 33, 36).  Moreover,
28  Plaintiff acknowledged that the tampon, kiss-blowing, certificate, and disparaging

- 13 -

1  remarks made by his co-workers had nothing to do with his age, race, or national origin
2  (DSF ¶¶ 47, 55, 225-26, 265-68). And after the tampon incident, the employee mail slots
3  were modified to make it more difficult to place such items in the slots (DSF ¶ 214).
4      As for the incident with the Cesar Chavez poster, the question is whether a
5  reasonable Hispanic person in Plaintiff's position would have viewed the incident as
6  resulting in a hostile work environment. While a reasonable Hispanic person might
7  consider the incident offensive, it is unlikely that a reasonable Hispanic person would
8  have viewed the incident as resulting in a hostile work environment. Plaintiff
9  acknowledged in his deposition testimony that other than this instance, he has never heard
10 or seen a co-worker make a racist comment (DSF ¶ 45). In addition, Plaintiff's
11 supervisor investigated the incident, determined that one of Plaintiff's co-workers was
12 responsible, and made that co-worker submit a written apology (DSF ¶¶ 42-43).
13     A few apparently unrelated and isolated instances spread over approximately 15
14 years are not enough to create a hostile work environment; a few instances don't create an
15 environment. Moreover, the alleged conduct was neither extreme nor pervasive. There is
16 simply no evidence in the record to indicate that a genuine issue of material fact exists as
17 to whether Plaintiff was subjected to verbal or physical conduct of a harassing nature that
18 was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and
19 create an abusive work environment.
20     Accordingly, Plaintiff has failed to establish a prima facie case of hostile work
21 environment.
22
23                               iv. Constructive Discharge
24     Under the constructive discharge doctrine, an employee's decision to resign
25 because of unendurable working conditions constitutes a formal discharge for remedial
26 purposes. Poland v. Chertoff, 494 F.3d 1174, 1184 (9th Cir. 2007). "The inquiry is
27 objective: Did working conditions become so intolerable that a reasonable person in the
28 employee's position would have felt compelled to resign?" Id. (citing Penn. State Police

v. Suders, 542 U.S. 129 (2004)).  Constructive discharge occurs only "when the working conditions deteriorate . . . to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." Id. (citing Brooks, 229 F.3d at 930).  Further, evidence of transfer and demotion is insufficient, as a matter of law, to establish constructive discharge.  Poland, 494 F.3d at 1184.

Here, Plaintiff offers no evidence to support his constructive discharge claim other than conclusory allegations that Defendants' alleged harassment and discrimination created intolerable working conditions.  The only evidence in the record regarding a change in Plaintiff's working condition is that he was not allowed to perform operations-related tasks due to his involvement in the January 2 and 3, 2005 incident (DSF ¶ 126).  Plaintiff's job title, work schedule, pay, overtime hours, and benefits remained unaffected (DSF ¶ 122-25, 130, 202-04, 265-67).  As discussed in the previous sections, there is no evidence in the record to support Plaintiff's allegations of discrimination, retaliation, or harassment.  Likewise, there is no evidence in the record to support Plaintiff's allegation that his working conditions were so intolerable that a reasonable person in his position would have felt compelled to resign.

Moreover, in June 2004 – six months before Plaintiff alleges that Defendants engaged in any discriminatory conduct – Plaintiff informed a Personnel Analyst with the Water Services Department that he planned to retire in a year and a half (DSF ¶ 298).  Basic addition instructs the Court that Plaintiff's scheduled retirement would have occurred at the end of 2005.  And, in fact, Plaintiff retired in December 2005 (DSF ¶ 12).

Accordingly, Plaintiff has failed to establish a claim of constructive discharge.

### B. **42 U.S.C. § 1981**

Discrimination based on "ancestry or ethnic characteristics" is prohibited under 42 U.S.C. § 1981.  St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987).  Analysis of a

discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII discrimination case. <u>Fonseca v. Sysco Food Services of Arizona, Inc.</u>, 374 F.3d 840, 850 (9th Cir. 2004). Both § 1981 and Title VII require proof of discriminatory treatment, and the same set of facts can give rise to both claims. <u>Id.</u> For the reasons stated above, there is no genuine issue of material fact as to whether Defendants discriminated against Plaintiff on the basis of his age, race, or national origin.

Accordingly, Plaintiff has failed to establish a claim of discrimination under 42 U.S.C. § 1981.

### C. **42 U.S.C. § 1983**

Analysis of a discrimination claim under § 1983 follows the same legal principles as those applicable in a Title VII discrimination case; "[u]nder section 1983, a plaintiff claiming [] discrimination in employment must also prove that the employer was motivated by a [] discriminatory purpose." <u>Stones v. Los Angeles Community College Dist.</u>, 796 F.2d 270 (9th Cir. 1986). For the reasons stated above, there is no genuine issue of material fact as to whether Defendants discriminated against Plaintiff on the basis of his age, race, or national origin.

Accordingly, Plaintiff has failed to establish a claim of discrimination under 42 U.S.C. § 1983.

### D. **42 U.S.C. § 1985(3) - Conspiracy**

To bring a successful cause of action under 42 U.S.C. § 1985(3), "a plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992). "[T]he absence of a section 1983 deprivation of rights

precludes a section 1985 conspiracy claim predicated on the same allegations." Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005) (quotation and citation omitted). For the reasons stated above, Plaintiff failed to establish a claim of discrimination under § 1983.

Accordingly, Plaintiff has failed to establish a claim of conspiracy under 42 U.S.C. § 1985(3).

V

In sum, viewing the evidence in the light most favorable to Plaintiff, the nonmoving party, the Court finds that Defendants City of Phoenix and Melvin Schlink have established the absence of any genuine issue of material fact. Plaintiff has relied on the conclusory allegations in his pleadings and has failed to present any specific facts to support a finding that any genuine issues of material fact exist. Thus, Defendants are entitled to a judgment as a matter of law.

**Accordingly,**

**IT IS HEREBY ORDERED** that Defendants' Motion for summary disposition of their motion for summary judgment (Dkt. #56) is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion for summary judgment (Dkt. #54) is granted.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to enter judgment accordingly.

DATED this 13th day of December, 2007.

_____
Mary H. Murguia
United States District Judge